UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

CMP CONSULTING SERVICES, INC., on
behalf of itself and all others similarly situated,

Plaintiff,

v.

LG PHILIPS LCD CO., LTD.; LG PHILIPS
LCD AMERICA, INC.; SAMSUNG
ELECTRONICS CO. LTD.; SHARP
CORPORATION; SHARP ELECTRONICS
CORPORATION; TOSHIBA CORPORATION;
TOSHIBA MATSUSHITA DISPLAY
TECHNOLOGY CO., LTD.; TOSHIBA
AMERICA, INC.; TOSHIBA AMERICA
INFORMATION SYSTEMS, INC.; SANYO
EPSON IMAGING DEVICES CORPORATION;
NEC CORPORATION; NEC LCD
TECHNOLOGIES, LTD.; NEC ELECTRONICS
AMERICA, INC.; AU OPTRONICS;
INTERNATIONAL DISPLAY TECHNOLOGY
CO., LTD.; INTERNATIONAL DISPLAY
TECHNOLOGY USA INC.; AU OPTRONICS
CORPORATION AMERICA; CHI MEI
OPTOELECTRONICS CORPORATION; AND
CHI MEI OPTOELECTRONICS USA, INC.,

Defendants.

Case No.  **06 CV No. 15417**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**



RECEIVED
DEC 2 2 2006
U.S.D.C. S.D. N.Y.
CASHIERS

CMP Consulting Services, Inc. ("Plaintiff"), on behalf of itself and all others similarly

situated, brings this action against the defendants named herein for treble damages, injunctive

relief and cost of suit damages under the antitrust laws of the United States, and in support of its

Complaint states as follows:

## NATURE OF THIS ACTION

1.     This case arises out of a conspiracy among all defendants and their co-conspirators with the purpose and effect of fixing prices and committing other unlawful practices designed to artificially raise, maintain or stabilize the prices of thin film transistor liquid crystal display products ("TFT-LCD Products"), which are used in televisions, computer monitors, mobile telephones, personal digital assistants and other devices. Plaintiff, on behalf of itself and the Class described below, brings this action pursuant to Section 4 of the Clayton Act, 15 U.S.C. §15(a).

2.     Plaintiff seeks treble damages, injunctive relief, and attorneys' fees and costs under the antitrust laws of the United States on behalf of itself and all others similarly situated who purchased TFT-LCD Products directly from one or more Defendants during the period from January 1, 2000 through the present (the "Class Period").

## THE PARTIES

3.     Plaintiff is a corporation incorporated under the laws of Florida, with its principal place of business at 7400 S.W. 50th Terrace, Suite 206, Miami, FL 33155. During the Class Period, Plaintiff purchased TFT-LCD Products directly from one or more Defendants or their controlled subsidiaries. As a result of the conspiracy, Plaintiff has been economically injured in that the prices it has paid for TFT-LCD Products have been artificially raised to anti-competitive levels by Defendants.

4.     Defendant LG Philips LCD Co., Ltd. ("LG Philips") is a Korean entity with its principal place of business located at 20 Yoido-dong, Youngdungpo-gu, Seoul 150-721, Republic of Korea. LG Philips is a joint venture created in 1999 by Philips Electronics NV and LG Electronics. LG Philips maintains offices in San Jose, California. In its Form 6-K filed on

2

December 11, 2006 with the United States Securities and Exchange Commission ("SEC"), LG Philips stated that it "is a leading manufacturer and supplier of thin-film transistor liquid crystal display panels"; that it "manufacturers TFT-LCD panels in a wide range of sizes and specifications for use in TVs, monitors, notebook PCs, and various applications"; and that it "currently operates seven fabrication facilities and four back-end assembly facilities in Korea, China and Poland." During the Class Period, LG Philips manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

5.      Defendant LG Philips LCD America, Inc. is a corporation organized under the laws of California with its principal place of business located at 150 East Brokaw Rd., San Jose, CA 95112. During the Class Period, LG Philips LCD America, Inc. manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

6.      Defendant Samsung Electronics Co. Ltd. ("Samsung") is a business entity organized under the laws of South Korea, with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea. During the Class Period, Samsung manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

7.      Defendant Sharp Corporation is a business entity organized under the laws of Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan. During the Class Period, Sharp Corporation manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

8.      Defendant Sharp Electronics Corporation is a wholly-owned and controlled subsidiary of Sharp Corporation, with its principal place of business at Sharp Plaza, Mahwah, New Jersey 07430. During the Class Period, Sharp Electronics Corporation manufactured, sold

3

and/or distributed TFT-LCD Products throughout the United States. Sharp Corporation and Sharp Electronics Corporation are referred to collectively as "Sharp."

9.      Defendant Toshiba Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. During the Class Period, Toshiba Corporation manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

10.      Defendant Toshiba Matsushita Display Technology Co., Ltd. is a business entity organized under the laws of Japan with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan. During the Class Period, Toshiba Matsushita Display Technology Co., Ltd. manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

11.      Defendant Toshiba America, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 251 Avenue of the Americas, New York, NY 10020. Toshiba America, Inc. is a wholly-owned and controlled subsidiary of defendant Toshiba Corporation. During the Class Period, Toshiba America Inc., through its subsidiaries and divisions manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

12.      Defendant Toshiba America Information Systems, Inc. ("TAIS") is a corporation organized under the laws of California, with its principal place of business located at 9740 Irvine Boulevard, Irvine CA 92618. TAIS is a wholly-owned and controlled subsidiary of defendant Toshiba America, Inc. During the Class Period, TAIS manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

13.      Toshiba Corporation, Toshiba Matsushita Display Technology Co., Ltd., Toshiba America, Inc. and TAIS are referred to collectively as "Toshiba."

4

14.    Defendant Sanyo Epson Imaging Devices Corporation ("Sanyo Epson") is a joint venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd., and started operations on October 1, 2004. Sanyo Epson combines the liquid crystal display operations of Epson, Sanyo Electric, and Sanyo Group companies Tottori Sanyo Electric Co., Ltd. and Sanyo LCD Engineering Co., Ltd. and mobilizes each company's special fields of miniaturization, high resolution, high definition, and volume production technology." Defendant Sanyo Epson's principal place of business is located at World Trade Center Building 15F, 2-4-1 Hamamatsu-cho, Minato-ku, Tokyo, Japan. During the Class Period, Sanyo Epson manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

15.    Defendant NEC Corporation is a business entity organized under the laws of Japan with its principal place of business located at 7-1, Shiba 5-chome, Minato-ku, Tokyo 108-8001 Japan. During the Class Period, NEC Corporation manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

16.    Defendant NEC LCD Technologies, Ltd. is a wholly-owned and controlled subsidiary of Defendant NEC Corporation, and is an entity organized under the laws of Japan with its principal place of business located at 1753 Shimonumabe, Makahara-Ku, Kawasaki, Kanagawa 211-8666, Japan. During the Class Period, NEC LCD Technologies, Ltd. manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

17.    Defendant NEC Electronics America, Inc. ("NEC") is a wholly-owned and controlled subsidiary of NEC Electronics Corporation, with its principal place of business at 2880 Scott Boulevard, Santa Clara, California. During the Class Period, NEC manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

5

18.    Defendant International Display Technology Co., Ltd. is an entity organized under the laws of Japan with its principal place of business located at Nansei Yaesu Bldg. 3F, 2-2-10 Yaesu, Chuo-Ku, Tokyo 104-0028, Japan. Defendant International Display Technology Co., Ltd. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation. During the Class Period, Defendant International Display Technology Co., Ltd. manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

19.    Defendant International Display Technology USA Inc. is a corporation organized under the laws of Delaware, with its principal place of business located at 101 Metro Drive, Suite 510, San Jose, California. Defendant International Display Technology USA Inc. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation. During the Class Period, Defendant International Display Technology USA Inc. manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

20.    Defendant AU Optronics is Taiwan's largest manufacturer of TFT-LCD Products and has its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan, R.O.C. During the Class Period, AU Optronics manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

21.    Defendant AU Optronics Corporation America ("AUOCA") is a wholly-owned and controlled subsidiary of AU Optronics and has its corporate headquarters at 9720 Cypresswood Drive, Suite 241, Houston, Texas. During the Class Period, AUOCA manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

22.    Defendant Chi Mei Optoelectronics Corporation ("Chi Mei") is a leading manufacturer of TFT-LCD Products and has its global headquarters at No. 3, Sec. 1, Huanshi Rd., Southern Taiwan Science Park, Sinshih Township, Tainan County, 74147 Taiwan R.O.C.

6

During the Class Period, Chi Mei manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

23.     Defendant Chi Mei Optoelectronics USA, Inc. is a wholly-owned and controlled subsidiary of Chi Mei and has its corporate headquarters at 101 Metro Drive, Suite 510, San Jose, California.  During the Class Period, Chi Mei Optoelectronics USA, Inc. manufactured, sold and/or distributed TFT-LCD Products throughout the United States.

## DEFENDANTS' AGENTS AND CO-CONSPIRATORS

24.     Wherever in this Complaint reference is made to any act, deed or transaction of any corporation or entity, it means that the corporation or entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

25.     Various individuals, partnerships, and corporations not named in this complaint have participated as co-conspirators in the violations of law alleged in this complaint, and have performed acts in furtherance thereof.  The identity of all co-conspirators is unknown at this time and will require discovery.

26.     The acts alleged in this Complaint to have been committed by Defendants were authorized, ordered and condoned by their parent companies and authorized, ordered and carried out by their officers, agents, directors, employees or representatives while engaged in the management, direction, control or transaction of their business affairs.

## TRADE AND COMMERCE

27.     Defendants and their co-conspirators manufactured, distributed, produced and/or sold TFT-LCD Products in the United States during the Class Period.

28.   During the Class Period, the conduct of Defendants and their co-conspirators has taken place in and affected the interstate and foreign trade and commerce of the United States.

29.   The conduct of Defendants and their co-conspirators has directly and substantially restrained such trade and commerce.

30.   Defendants have manufactured, sold and shipped substantial quantities of TFT-LCD Products in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the countries or states in which Defendants produced TFT-LCD Products.

## JURISDICTION AND VENUE

31.   Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15(a) and 26.

32.   Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§15(a) and 26, and 28 U.S.C. §1391(b), (c) and (d) because Defendants and their co-conspirators have committed acts in furtherance of the conspiracy, resided, transacted business, were found or had agents in this District, and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

33.   The Court has *in personam* jurisdiction over each of the Defendants because each Defendant transacted business throughout the United States, manufactured, sold, shipped, and/or delivered substantial quantities of TFT-LCD Products throughout the United States, had substantial contact with the United States, and was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons and entities residing in, located in, or doing business throughout the United States.

## CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action on behalf of itself and as a class action under the

provisions of Rules 23(a), and (b)(3) of the Federal Rules of Civil Procedure on behalf of all

members of the following class:

> All persons or entities who purchased TFT-LCD Products directly from one or
> more Defendants or any predecessor, successor, subsidiary or affiliate of any
> defendant or their co-conspirators in the United States from January 1, 2000
> through the present (the "Class Period"). Excluded from the class are Defendants,
> their co-conspirators and their respective parents, subsidiaries and affiliates, and
> governmental entities.

35.    Plaintiff does not know the exact number of class members because such

information is in the exclusive control of Defendants and/or their co-conspirators. However, due

to the nature of the trade and commerce involved, Plaintiff believes that the number of class

members is at least in the hundreds and is so numerous that joinder of all persons is

impracticable.

36.    Plaintiff is a member of the class and Plaintiff's claims are typical of other

members of the class who likewise sustained antitrust injury and were damaged through

Defendants' sales of TFT-LCD Products at artificially high prices.

37.    Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff

purchased TFT-LCD Products directly from one or more of the Defendants and has a common

and non-antagonistic interest in recovering damages caused by Defendants' unlawful activity and

enjoining and deterring future unlawful activity in the TFT-LCD Products market.  In addition,

Plaintiff is represented by counsel who are competent and experienced in the prosecution of

antitrust and other complex class-action litigation.

38.    Questions of law and fact common to the class members predominate over

questions, if any, that may affect only individual members because Defendants have acted on

grounds generally applicable to the entire class. Such generally applicable conduct is inherent in Defendants' collusion. Common questions of law and fact include:

(a)    Whether Defendants and others combined, conspired, or contracted to fix prices of TFT-LCD Products at artificially high levels, and otherwise restrain trade in the purchase of TFT-LCD Products;

(b)    The dates of the formation of this illegal contract or conspiracy;

(c)    The identities of participants in the conspiracy;

(d)    The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

(e)    Whether Defendants and their co-conspirators fraudulently concealed their conspiracy;

(f)    Whether class members have been damaged by the illegal conspiracy, including the degree to which prices paid by the class were higher than those that would be paid in a market free from collusion;

(g)    The appropriateness of injunctive relief to restrain future violations;

(h)    Whether the alleged conspiracy violated Section 1 of the Sherman Act;   and

(i)    Whether the conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiff and the other members of the class.

39.    Class action treatment is superior to other means of prosecuting these claims as the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication. Moreover, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum

simultaneously, efficiently, and without the duplication, effort or expense that numerous individual actions would entail.

40.    No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

41.    The class is readily identifiable and is one for which records likely exist in the files of Defendants.

42.    Defendants have acted on grounds generally applicable to the entire class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class.

### TFT-LCD

43.    TFT-LCD Products are a variant of Liquid Crystal Display (LCD) which use Thin-Film Transistor (TFT) technology to improve the image quality. The basic structure may be thought of as two glass panels sandwiching a layer of liquid crystal. The front glass panel is fitted with a color filter while the back panel has a fabrication of transistors and a back light unit. When voltage is applied to the transistor, the liquid crystal is bent, allowing light to pass through to form a pixel, which are then colored by the color filter. The combination of these pixels in different colors forms the image on the panel. Normal LCD like those found in calculators have direct driven image elements – a voltage can be applied across one segment without interfering with other segments of the display. This is impractical for a large display with a large number of pixels, which will require a very large number of electrical connection points.

44.    TFT-LCD Products are used for the manufacturing of monitors for: portable and laptop computers, desktop computers, PDAs (personal digital assistant), cellular phones, wristwatches, camcorders, and television screens.

45.    As Defendant LG Philips states on its website, "the thin-film transistor liquid crystal display ("TFT-LCD") is a cutting-edge display, which screens picture information by adjusting the amount of light permitted." LG Philips further states that "TFT is a circuit formed with semiconductor films on a thin glass substrate to control liquid crystals.... This circuit plays a vital role in controlling each pixel, the basic unit of a picture image. The color filter displays a color image by coating the pixel (red, green and blue) on a glass substrate."

46.    At the portion of its website entitled "How TFT-LCD Works" Defendant LG Philips explains:

> A pixel, the smallest unit to indicate a picture image, is formed by three sub-pixels consisting of red, green, and blue. The number of pixels arranged in a display determines the resolution of the TFT-LCD. TFT is composed of the data line (image signal transfer) and gate line (TFT on/off signal transfer). TFT existing in each sub-pixel controls the voltage difference between the TFT glass electrode and the color filter glass electrode in order to adjust the molecular array of liquid crystals. Such change in the molecule direction of liquid crystals alters the amount of light penetrating the liquid crystal layer. Consequently, the TFT-LCD display shows picture image information.

47.    The company describes some of the applications for TFT-LCD technology as follows:

> TFT-LCD technology has created a wide range of computer and consumer products that would have not been possible with cathode ray tubes (CRT). The flat and thin attributes of LCDs make them ideal for mobile or portable applications. In addition, LCDs can operate at low voltage levels and dissipate with low heat exposure. Initially, LCDs were incorporated into notebook computers, similar in size and resolution to 12-14 inch CRT monitors. Through innovation, TFT-LCD engineers were able to develop

12

displays providing much higher resolution than CRT's, in addition to producing them in larger sizes.

Today, TFT-LCDs are challenging CRT-based desktop computer monitors. As a result, a wider range of mobile computing applications are now available. Engineers have found ways to reduce weight, thickness, and the frame width of notebook computer displays. New TFT process technologies make it possible to deliver more pixels per inch and allow even portable computers to display more information than the latest CRT monitor. Such technology became available just as DVDs became popular, so consumers can now get DVD players in very thin and light packages. Currently, a similar transformation is occurring with next-generation cell phones and wireless networks.

48.     The market for TFT-LCD Products is huge. An October 10, 2006 article stated that "[m]anufacturers are expected to pump out 48.4 million LCDs for TVs this year alone, up 70 percent over 2005, while flat-panel sales – most of those using LCD technology – are expected to reach $US 88 billion this year and $US billion in 2007, according to market research company DisplaySearch."

49.     The market for the manufacture and sale of TFT-LCD Products is also conducive to the type of collusive activity alleged here. The market is oligopolistic in nature. In 2005, LG Philips had 21.4% of the large TFT-LCD panel global market share, Samsung had 20.9%, AU Optronics had 14.5%, Chi Mei had 11.8%, while the remaining suppliers controlled 31.4%. Samsung took over the leading position in the industry in 2006.

50.     Some of the Defendants are known antitrust violators. Samsung, for example, was fined $300 million by the United States Department of Justice ("DOJ") in October of 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory. It is also under investigation by the DOJ (along with some of the other Defendants) for fixing prices of Static Random Access Memory.

51.     The market for the manufacture and sale of TFT-LCD Products is subject to high

manufacturing and technological barriers to entry. LG Philips has stated: "The flat panel display

industry is characterized by high entry barriers due to rapidly evolving technology, capital-

intensive characteristics, and the significant investments required to achieve economies of scale,

among other factors." Efficient fabrication plants are large and costly and TFT-LCD Products

are also subject to continuous technological advances, so that firms within the industry must

undertake significant research and development expenses.

52.     The industry is also marked by a web of cross-licensing agreements that facilitate

collusion. AU Optronics, for example, entered into licensing agreements with Sharp in 2005 and

Samsung in 2006. Chi Mei has licensing arrangements with Sharp and AU Optronics.

53.     The TFT-LCD Products industry has also been subject to significant consolidation

during the Class Period, as reflected in AU Optronics' recent acquisition of Quanta Display, the

creation in 2001 of AU Optronics itself through the merger of Acer Display and Unipac

Optoelectronics, or Fujitsu Limited's transfer of its LCD business to Sharp in 2005.

## DEFENDANTS' ILLEGAL CONDUCT

54.     Defendants and their co-conspirators have engaged in a contract, combination, or

conspiracy, the effect of which was to fix, raise and maintain the prices at which they sold TFT-

LCD Products to artificially inflated levels from at least January 1, 2000 through at least the

present.

55.     Very recently, antitrust enforcement authorities in multiple countries have begun

investigating this unlawful cartel. On December 11, 2006, Defendant LG Philips, in its Form 6-

K filed with the SEC, stated the following:

> Last Friday, as part of an investigation of possible anticompetitive
> conduct in the LCD industry, officials from the Korean Fair Trade

Commission (KFTC) visited the offices of LG Philips LCD in Seoul Korea. In addition, the Japanese Fair Trade Commission (JFTC) issued a notice to our offices, in Tokyo, Japan and then United States Department of Justice (DOJ) issued a subpoena to our offices in San Jose, California.

56.    On December 11, 2006, the Reuters news agency reported the following:

Samsung Electronics Co. Ltd (005930.KS) is being investigated by fair trade watchdogs in South Korea, Japan and the United States, the second Korean flat screen maker named in a probe into possible price-fixing, a news agency report said on Tuesday.

The report, from South Korea's Yonhap news agency, follows a Disclosure by LG Philips LCD Co. Ltd. (034220.KS) on Monday that it was the target of an investigation by the Korean Fair Trade Commission (KFTC), the Japanese Fair Trade Commission (JFTC) and had received a subpoena from the U.S. Department of Justice...

Yonhap cited unnamed regulatory and industry sources in reporting local antitrust authorities were also looking into possible collusion by Samsung and LG Philips to fix the prices of LCD products and control their supply...

Late on Monday, a KFTC spokesman said the probe was being Conducted by the Cartel Investigation Group.

57.    On December 12, 2006, other companies, including AU Optronics, Sharp, and Sanyo, indicated they were also under investigation. According to one report, "[t]he subject of the probe is price fixing,' Akinori Yamada, a direct of management and planning at Japan's Fair Trade Commission, said in Tokyo today. He said LG Philips and Samsung were being questioned, although he declined to name or give the number of the other companies being investigated. In Washington, U.S. Justice Department spokeswoman Gina Talamona said the agency is investigating the possibility of anticompetitive practices" and is cooperating with foreign authorities." Another report indicated that "Min Chun Hong, an analyst at Goodmorning

Shinhan Securities, said that if the companies [Samsung and LG Philips] were convicted, penalties could amount to about 200 billion won, or $216 million, each."

## ALLEGATIONS OF WRONGDOING

58.    Plaintiff realleges and incorporates by reference as if truly set forth herein the allegations contained in this Complaint.

59.    Beginning at least as early as January 1, 2000 and continuing until at least through the present, the Defendants and their co-conspirators engaged in a combination and conspiracy to suppress and eliminate competition which had the effect of raising, maintaining, or stabilizing the price of TFT-LCD Products sold in the United States and elsewhere in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

60.    During the Class Period, in order to formulate and effectuate the alleged contract, combination, and/or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, the purpose and effect of which were to artificially raise, fix, maintain, and/or stabilize prices for TFT-LCD Products in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

61.    The alleged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendants and co-conspirators, the substantial terms of which were to limit production, allocate markets and customers and raise, stabilize and maintain prices of TFT-LCD Products sold in the United States and elsewhere.

62.    For purposes of forming and carrying out the charged combination and conspiracy, the defendants and co-conspirators did those things that they combined and conspired to do, including, among other things:

(a)    Participating in meetings and conversations in the United States and elsewhere to discuss limiting production, allocating markets and customers, and pricing of TFT-LCD Products sold in the United States;

(b)    Agreeing during those meetings and conversations, to limit production, allocate markets and customers, and fix, raise and maintain prices at certain levels of TFT-LCD Products sold in the United States and elsewhere;

(c)    Allocating markets and customers;

(d)    Limiting production; and

(e)    Fixing, raising and maintaining prices of TFT-LCD Products sold in the United States and elsewhere.

63.    The combination and conspiracy engaged in by the Defendants and their co-conspirators as to TFT-LCD Products was an unlawful restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. §1).

## INJURY TO PLAINTIFF AND THE CLASS

64.    From a date unknown, but at least from January 1, 2000 and continuing through at least the present, Defendants and their co-conspirators have combined, conspired and/or contracted to restrain interstate trade in violation of 15 U.S.C. §1.

65.    Defendants' illegal combination and conspiracy alleged herein has had the following effects, among others:

a.    Price competition in the sale of TFT-LCD Products has been restrained, suppressed and/or eliminated;

17

b.      Prices for TFT-LCD Products sold by Defendants and their co-conspirators have

been fixed, raised, maintained and stabilized at artificially high, non-competitive

levels; and

c.      Direct purchasers of TFT-LCD Products from Defendants, their co-conspirators,

or their subsidiaries or controlled affiliates have been deprived of the benefit of

free and open competition.

66.     As a direct and proximate result of the conspiracy, Defendants have restrained

competition in the sale of TFT-LCD Products and injured Plaintiff and each class member in

their business and property in that they have each paid a higher price for TFT-LCD Products than

they would have paid in the absence of the illegal conspiracy and have suffered damages in

amount presently undetermined.

67.     The conduct of Defendants and their co-conspirators constitutes a *per se* violation

of Section 1 of the Sherman Act 15 U.S.C. §1.

## FRAUDULENT CONCEALMENT

68.     Throughout the Class Period, Defendants fraudulently concealed their unlawful

conspiracy from Plaintiff and the class.  Defendants conducted their conspiracy in secret and

kept it mostly within the confines of their higher level executives.  Moreover, on numerous

occasions throughout the Class Period, Defendants affirmatively provided pretextual and false

justifications to class members regarding price increases.

69.     Plaintiff and other class members had no knowledge of the contract, combination

and conspiracy alleged in this Complaint, or any facts that might have led to the discovery

thereof, in the exercise of reasonable diligence, until approximately December 11, 2006, when it

was disclosed that South Korea's antitrust authorities were investigating Samsung and LG Phillips concerning collusion to rig the prices of liquid crystal display products.

70.    Plaintiff, in the exercise of reasonable diligence, could not have uncovered the violations set forth in this complaint at any earlier time because of Defendants' efforts to conceal the unlawful activity from detection. Moreover, while Plaintiff has diligently sought to protect itself from unlawful activity, Plaintiff was unable to detect the above-described conspiracy because the co-conspirators conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and method designed to avoid detection.

71.    Defendants and their co-conspirators actively, intentionally and fraudulently engaged in a successful, illegal price-fixing conspiracy with respect to TFT-LCD Products, in at least the following manner: by meeting secretly to discuss limiting production, allocating markets and customers, and agreeing on prices of TFT-LCD Products sold in the U.S. and elsewhere; by agreeing among themselves at meetings and communications not to discuss publicly, or otherwise reveal the nature and substance of the acts and communications in furtherance of their illegal scheme; and by giving false and pretextual reasons for the pricing of TFT-LCD Products sold by them during the Class Period and by falsely describing such pricing as being the result of market factors rather than collusion.

72.    As a result of Defendants' and their co-conspirators' fraudulent concealment of the their conspiracy, Plaintiff and the class assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiff and the members of the class.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and all others similarly situated, respectfully prays that:

A.    The Court determine that this action may be maintained as a class action under Rules 23 (a) and (b)(3) of the Federal Rules of Civil Procedure ("FRCP") and directing that reasonable notice be provided in compliance with Fed.R.Civ. P. 23(c)(2);

B.    The unlawful combination and conspiracy alleged herein be adjudicated and decreed a *per se* violation under Section 1 of the Sherman Act, 15 U.S.C. §1;

C.    Judgment be entered against each Defendant, jointly and severally, and in favor of Plaintiff and the class it represents for damages sustained by them in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. §15(a);

D.    Defendants, their co-conspirators, successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or effect in restraining competition;

E.    Plaintiff and the class be awarded their expenses and costs, including reasonable attorneys' fees as permitted by law;

F.    Plaintiff and the class be awarded pre-judgment and post-judgment interest at the highest-legal rate from and after the date of service of this complaint to the extent provided by law;

G.    Plaintiff and the class it represents be awarded such additional and further relief as the Court may deem proper.

## JURY DEMAND

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff demands a trial by jury on all the claims asserted in this Complaint so triable.

Dated: December 22, 2006

Respectfully Submitted,

KAPLAN FOX & KILSHEIMER LLP

By: _____

Robert N. Kaplan (RK 3100)
Richard J. Kilsheimer (RK 6228)
Gregory K. Arenson (GA 2426)

805 Third Avenue, 22nd Floor
New York, NY 10022
Tel: 212-687-1980
Fax: 212-687-7714

LEVIN FISHBEIN SEDRAN & BERMAN
Howard J. Sedran
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Tel.: (215) 592-1500
Fax: (215) 592-4663

*Attorneys for Plaintiff*
*CMP Consulting Services, Inc.*